1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHERMAN CUMMINGS,

11            Petitioner,                    No. CIV S-10-2657 JAM DAD P

12       vs.

13   ATTORNEY GENERAL OF THE
     STATE OF CALIFORNIA,
14
              Respondent.                    FINDINGS & RECOMMENDATIONS
15
     _____/
16

17            Petitioner is a former state prisoner proceeding pro se with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him in the Sacramento County Superior Court on charges of grand theft from a

20   person, assault, and making a criminal threat.  He seeks federal habeas relief on the grounds that

21   the trial court's erroneous admission of evidence violated his right to due process.  Upon careful

22   consideration of the record and the applicable law, the undersigned will recommend that

23   petitioner's application for habeas corpus relief be denied.

24                            PROCEDURAL BACKGROUND

25            On October 19, 2007, after a jury trial, petitioner was convicted of grand theft

26   from a person, simple assault, misdemeanor battery, and making a criminal threat.  (Clerk's

                                            1

1   Transcript on Appeal at 279.)  The jury acquitted petitioner of robbery and aggravated assault.

2   (Id. at 183, 185.)  The trial court subsequently sentenced petitioner to a term of three years in

3   state prison.  (Reporter's Transcript on Appeal, Volume II, at 366-67.)

4                On November 5, 2009, petitioner filed his opening brief on appeal in the

5   California Court of Appeal for the Third Appellate District.  (Resp't's Lod. Doc. No. 2.)  By

6   order dated May 19, 2010, the state appellate court reversed petitioner's conviction for battery,

7   modified his sentence accordingly, and otherwise affirmed the judgment of conviction.  (Resp't's

8   Lod. Doc. No. 1.)

9                On June 10, 2010, petitioner filed a petition for review in the California Supreme

10   Court, raising the sole claim that the trial court violated his right to due process under both the

11   U.S. and California Constitutions when it admitted evidence that he had committed a prior

12   assault on the husband of his victim in this case.  (Resp't's Lod. Doc. No. 5.)  The Supreme

13   Court summarily denied that petition by order dated July 22, 2010.  (Resp't's Lod. Doc. No. 6.)

14                Petitioner commenced his federal habeas action by filing a petition for writ of

15   habeas corpus in this court on September 30, 2010.

16                                          FACTUAL BACKGROUND

17                In its unpublished memorandum and opinion affirming petitioner's judgment of

18   conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided

19   the following factual summary:

20            A jury convicted defendant Sherman Cummings of grand theft
              from a person, simple assault, misdemeanor battery, and making a
21            criminal threat.  (Pen. Code, §§ 487, subd. (c), 240, 242, 422.)  The
              jury acquitted him of robbery and aggravated assault.  (Pen. Code,
22            §§ 211, 245, subd. (a)(1).)  The trial court sentenced defendant to
              prison for a total of three years.  Defendant timely filed this appeal.

23
              Defendant contends the trial court should not have allowed the
24            People to introduce evidence of a prior assault he committed

25   _____

26            [1]  Notice of Lodging Documents on January 31, 2012 (Doc. No. 22), Resp't's Lod. Doc.
     No. 1 (hereinafter Opinion).

                                                      2

against the current victim's husband.  We shall conclude the trial court properly admitted this evidence.  Defendant also contends – and the Attorney General concedes – that the battery conviction must be reversed because it was not a charged offense or necessarily included within a charged offense.  We agree.  We shall reverse the battery conviction, modify the sentence, and otherwise affirm the judgment.

BACKGROUND

The victim, Delores Sears, lived about four blocks from George's Market.  She lived with Ervin Miller, whom she had been with since about 2003, and she was now married to him.  She testified that at about 9:30 p.m., on July 18, 2007, she walked her dog toward George's Market.  She had had a sexual relationship with defendant, but testified it ended over a year before.  As she walked to the market, defendant ran up to her, talking crazy.  He said "he was going to get his hoes to kick my ass."  He grabbed a bag she was carrying that had three dollars in it, and ran towards the market.  She was scared.  As she walked back home, defendant caught up with her and asked her to go to his house because he wanted her dog to mate with his dog.  He also told her he would "kill me and my dog."  He grabbed her and began to choke her so she could not scream.  At one point he kicked her dog, and when it became aggressive, he walked off, fast.

Sears testified she knew that defendant had assaulted her husband Miller the year before this incident, and had seen Miller's injuries; this knowledge affected her during the current incident.  Sears had a misdemeanor burglary conviction.

When police arrived, Sears was upset and crying.  She reported pain, and had redness around her neck.  She told an officer that defendant first made a threat to her as she ran through her front door.  Miller testified that Sears came home crying and upset.  Miller had two convictions reflecting moral turpitude.

Miller testified that on July 19, 2006, as he was riding his bike to George's Market, defendant jumped out and hit him in the face twice, cutting his cheek, and he still bore scars, which he showed to the jury.  A police officer testified that Miller had "fairly" deep lacerations from his chin to his ear, and bruising under his eye, as a result of the 2006 incident.  Defendant pled guilty to assault and was granted probation, with conditions that he serve 120 days in jail and not come within 100 feet of Sears and Miller's house.

In count one, the jury acquitted defendant of robbery but convicted him of grand theft from a person.  In count two, the jury acquitted defendant of aggravated assault, but convicted him of assault and battery.  In count three, the jury convicted defendant of making a criminal threat.

1   Based on the verdicts, the trial court found defendant violated his
    probation in a prior case (Sacramento County Superior Court No.
2   06F06314), in which defendant pled guilty to aggravated assault
    (Pen .Code, § 245, subd. (a)(1)) stemming from his 2006 attack on
3   Miller.

4   The trial court sentenced defendant to a total of three years in
    prison, as we describe in more detail later in this opinion.
5   Defendant timely appealed.

6                               ANALYSIS

7   I.  Standards of Review Applicable to Habeas Corpus Claims

8              An application for a writ of habeas corpus by a person in custody under a

9   judgment of a state court can be granted only for violations of the Constitution or laws of the

10  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

11  interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct.

12  13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146,

13  1149 (9th Cir. 2000).

14             Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

15  habeas corpus relief:

16             An application for a writ of habeas corpus on behalf of a
               person in custody pursuant to the judgment of a State court shall
17             not be granted with respect to any claim that was adjudicated on
               the merits in State court proceedings unless the adjudication of the
18             claim -

19                   (1) resulted in a decision that was contrary to, or involved
               an unreasonable application of, clearly established Federal law, as
20             determined by the Supreme Court of the United States; or

21                   (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
22             State court proceeding.

23             For purposes of applying § 2254(d)(1), "clearly established federal law" consists

24  of holdings of the United States Supreme Court at the time of the state court decision.  Stanley v.

25  Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06

26  (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

1  clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at

2  859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010).

3         A state court decision is "contrary to" clearly established federal law if it applies a

4  rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

5  Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640

6  (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

7  grant the writ if the state court identifies the correct governing legal principle from the Supreme

8  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

9  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

10 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

11 simply because that court concludes in its independent judgment that the relevant state-court

12 decision applied clearly established federal law erroneously or incorrectly. Rather, that

13 application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v.

14 Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

15 habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

16 the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit

17 precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

18 the state court's decision." Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

19 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for

20 obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

21 ruling on the claim being presented in federal court was so lacking in justification that there was

22 an error well understood and comprehended in existing law beyond any possibility for fairminded

23 disagreement." Harrington,131 S. Ct. at 786-87.

24 _____

25    [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26 presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
   384 F.3d 628, 638 (9th Cir. 2004)).

1       If the state court's decision does not meet the criteria set forth in § 2254(d), a

2   reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.

3   Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

4   Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

5   of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

6   considering de novo the constitutional issues raised.").

7       The court looks to the last reasoned state court decision as the basis for the state

8   court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

9   2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning

10  from a previous state court decision, this court may consider both decisions to ascertain the

11  reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

12  banc). "When a federal claim has been presented to a state court and the state court has denied

13  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

14  of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at

15  784-85. This presumption may be overcome by a showing "there is reason to think some other

16  explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker,

17  501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides

18  no reasoning to support its conclusion, a federal habeas court independently reviews the record to

19  determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860;

20  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is

21  not de novo review of the constitutional issue, but rather, the only method by which we can

22  determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at

23  853. Where no reasoned decision is available, the habeas petitioner still has the burden of

24  "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct.

25  at 784.

26  /////

1       When it is clear, however, that a state court has not reached the merits of a

2 petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

3 federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v.

4 Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.

5 2003).

6 II.  Petitioner's Due Process Claim

7       Although petitioner raises four separately articulated grounds for relief, his

8 arguments in reality encompass only one basic claim: that the trial court violated his right to due

9 process when it admitted evidence of his prior assault on Mr. Miller.  In his first ground for

10 relief, petitioner argues that evidence of that prior assault was inadmissible to show his intent to

11 threaten Sears.  (Doc. No. 13 at 4.)[3]  In his second ground for relief, petitioner argues that the

12 challenged evidence was inadmissible to show his "motive."  (Id.)  In his third ground for relief,

13 petitioner argues that the evidence of his prior assault on Miller was "not admissible to prove that

14 Ms. Sears was frightened by [petitioner's] threats."  (Id. at 5.)  Petitioner elaborates as follows:

15     Indeed, if her testimony is to be believed at all she had on the day
in question a far better reason to be afraid of Mr. Cummings than
16     the fact that he had assaulted her husband one year prior.  In sum
while the evidence of the prior assault was probably relevant, it
17     was far less relevant than evidence that the jury already had.

18 (Id.)  In his fourth ground for relief, petitioner contends that the challenged evidence was "more

19 prejudicial than probative under Evidence Code Section 352."  (Id.)  In this regard, he argues:

20     The trial court's instruction allowed the jury to use the uncharged
acts testimony in so many improper ways, it is difficult to know
21     exactly how this evidence was used, the jury considered the
evidence for a variety of purposes for which it was inadmissible,
22     irrelevant and prejudicial under state law.

23 (Id.)

24 /////

25

26     [3]  The court's citations to the record refer to the electronic numbering system on all documents filed electronically with the court.

7

1          The California Court of Appeal rejected petitioner's challenges to the trial court's

2   admission of evidence of his assault on Miller.  That court reasoned as follows:

3          Defendant contends the trial court improperly allowed the
           prosecutor to introduce evidence of the 2006 assault on Miller
4
           The People filed an in limine motion regarding the uncharged
5          offense.  The People argued the assault on Miller would show
           intent and motive, because defendant was jealous of Sears's
6          relationship with Miller, a White man.  Further, because Sears
           knew about defendant's assault on Miller, the evidence would tend
7          to show that Sears was genuinely and reasonably in fear.

8          Sears's fear was relevant to two offenses.  The robbery charge
           required the People to prove, in part, that defendant took property
9          "by force or fear."  (Pen. Code, § 211; see People v. Bordelon
           (2008) 162 Cal. App.4th 1311, 1319.)  The criminal threat charge
10         required the People to prove, in part, that defendant's threat caused
           Sears "reasonably to be in sustained fear for . . . her own safety or
11         for . . . her immediate family's safety[.]"  (Pen. Code, § 422; see In
           re Ricky T. (2001) 87 Cal. App.4th 1132, 1139-1141.)  Thus,
12         evidence that she was actually aware of defendant's ability to
           inflict serious injury, as he had done to her husband the year
13         before, would be probative of her fear of defendant, both to show
           that she relinquished money to him out of fear and to show that she
14         actually and reasonably was placed in "sustained fear" by his
           threatening words.[4]
15
           The trial court ruled the evidence was admissible and was not more
16         prejudicial than probative. The trial court stated that, in addition to
           showing the relationships of the parties, the evidence could be used
17         to show motive and intent, and could be used by the defense to
           show a motive on the part of Sears to lie.
18
           The trial court did not explicitly state whether or not the evidence
19         could be used to show fear for purposes of robbery.  However, the
           limiting instruction read to the jury, CAL CRIM No. 375, stated in
20         part that the evidence could be used "for the limited purpose of
           deciding whether or not the defendant acted with the intent to
21         communicate a threat, that his statement be understood as a threat
           in this case, or the defendant had a motive to commit the offenses
22

23         _____

              [4]  The fact that defendant was later acquitted of these two charges is not relevant.  As a
24   general rule, a trial court's determination must be evaluated based on the circumstances known to
     the court at the time of the ruling.  (See, e.g., People v. Jenkins (2000) 22 Cal.4th 900, 1009
25   ["The court was well within its discretion in denying the motion to exclude this evidence
     pursuant to Evidence Code section 352, considering the facts before it at the time of the
26   motion"].)

alleged in this case. [¶] Do not consider this evidence for any other purposes except for the limited purpose of intent and motive."

On appeal, defendant contends the evidence of his 2006 assault on Miller was inadmissible to show intent, motive, or Sears's fear, in the 2007 incident, and it was more prejudicial than probative.  We disagree with these contentions.

The evidence was admissible for all three of the challenged reasons.

As for intent, defendant concedes that "[t]he least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent."  (People v. Ewoldt (1994) 7 Cal.4th 380, 402 (Ewoldt).)  However, citing People v. Balcom (1994) 7 Cal.4th 414 (Balcom), he argues "regardless of the similarity of uncharged and charged acts, uncharged acts may not be admitted to prove intent where – if the jury believes the prosecutor's theory of events – it must necessarily believe that the defendant acted with the requisite intent."

Balcom explained its holding succinctly as follows:

"The victim testified that defendant placed a gun to her head and forced her to engage in sexual intercourse.  Defendant conceded that he engaged in sexual intercourse with the victim but denied that he used a gun or otherwise accomplished such intercourse against the victim's will, claiming she voluntarily consented.  [¶] These wholly divergent accounts create no middle ground from which the jury could conclude that defendant committed the proscribed act of engaging in sexual intercourse with the victim against her will by holding a gun to her head, but lacked criminal intent because, for example, he honestly and reasonably, but mistakenly, believed she voluntarily had consented.  [Citation.]  On the evidence presented, the primary issue for the jury to determine was whether defendant forced the complaining witness to engage in sexual intercourse by placing a gun to her head.  No reasonable juror considering this evidence could have concluded that defendant committed the acts alleged by the complaining witness, but lacked the requisite intent to commit rape."  (Balcom, supra, 7 Cal.4th at p. 422.)  Balcom acknowledged that defendant's not guilty plea "put in issue all of the elements of the offenses, including his intent [citation], and evidence that defendant committed uncharged similar offenses would have some relevance regarding defendant's intent in the present case.  But, because the victim's testimony that defendant placed a gun to her head, if believed, constitutes compelling evidence of defendant's intent, evidence of defendant's uncharged similar offenses would be merely cumulative on this issue."  (Id. at pp. 422-423.)

/////

9

Defendant contends: "The prosecutor's theory of the present case was that [defendant] choked and threatened [Sears], and robbed her of a plastic bag which contained three dollars. The defense theory was that [Sears] was simply lying – that she made up the attack, had not been choked or robbed, and had not been threatened. Just as in <u>Balcom</u>, the jury could not have believed the prosecutor's version of events without also finding [defendant] had the requisite intent." We do not agree with this contention.

As stated, the limiting instruction in part allowed the jury to use the evidence as it related to the criminal threat charge (Pen. Code, § 422), that is, "for the limited purpose of deciding whether or not the defendant acted with the intent to communicate a threat," and "that his statement be understood as a threat[.]" The jury could have found, factually, that defendant made the statements Sears described in her testimony, while also finding that defendant lacked the intent to communicate a threat, that is, that he meant the words in jest, or that he said them as part of an angry outburst, rather than "with the specific intent to be taken as a threat." (<u>People v. Felix</u> (2001) 92 Cal. App.4th 905, 911.) Thus, the evidence was relevant to show that he intended his statements to "be understood as" threats, one of the elements the jury was required to find as to this charge (CAL CRIM No. 1300). (<u>See People v. Garrett</u> (1994) 30 Cal. App.4th 962, 967 (<u>Garrett</u>) [fact victim knew Garrett had killed someone was admissible to show he had intent that threat be taken seriously].) The evidence was not cumulative to other evidence on this point. (<u>Cf. Balcom</u>, <u>supra</u>, 7 Cal.4th at pp. 422-423.)

As for motive, "the probativeness of other-crimes evidence on the issue of motive does not necessarily depend on similarities between the charged and uncharged crimes, so long as the offenses have a direct logical nexus." (<u>People v. Demetrulias</u> (2006) 39 Cal.4th 1, 15.) It was reasonable to infer that defendant attacked Miller in the past, and attacked Sears in the current offense, because of jealousy or anger lingering from his prior sexual relationship with Sears. It is true, as defendant points out, that he made no statements in either incident that explicitly revealed his motive. However, evidence of what a person is thinking "is almost inevitably circumstantial," (<u>People v. Bloom</u> (1989) 48 Cal.3d 1194, 1208) and "'courts and juries every day pass upon knowledge, belief and intent – the state of men's minds – having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'" (<u>United States v. Williams</u> (2008) 553 U.S. 285 [170 L.Ed.2d 650, 671]; <u>see People v. Johnson</u> (1901) 131 Cal. 511, 514.)

In this case, the circumstances show that Sears used to have a sexual relationship with defendant, but is married to Miller, that defendant slashed Miller's face a year before, and in this incident

threatened and choked Sears. From these circumstances, one can rationally infer that defendant attacked Sears because he was jealous or angry. Further, in the current incident defendant threatened to have prostitutes attack Sears, and he wanted his dog to mate with her dog. These two sexually-charged comments could rationally be used to bolster the claim that defendant harbored lingering sexual interest in Sears, and a corresponding anger towards her for rejecting him, providing a clear motive for his attack on her.

Defendant cites authority for the proposition that prior crimes evidence should be excluded "where motive [is] not seriously contested[.]" But the case defendant cites states such evidence should be excluded where it "is highly prejudicial, yet has only marginal relevance to a fact (motive) which was not seriously contested, and has virtually no tendency to prove that fact." (People v. Bigelow (1984) 37 Cal.3d 731, 748.) In this case the evidence had a solid tendency to prove jealousy, and motive was not uncontested. Defendant argues the evidence was not admissible to show motive in this case because if the jury believed Sears's testimony about the current incident, the jury would necessarily infer the motive of jealousy; "[I]n fact, the motive for the crimes was so obvious that the prosecutor did not even bother alluding to it in her closing statements." We disagree. The prosecutor could not know what quantum of evidence would persuade the jury on this point, and evidence that defendant had attacked Miller in the past would bolster the theory of jealousy. It was not cumulative. (Cf. Balcom, supra, 7 Cal.4th at pp. 422-423.)

Defendant argues the evidence was not admissible to show Sears's fear of defendant. Again he argues that if the jury believed defendant said he would kill Sears and her dog, "they would necessarily believe that she had a good reason to be afraid of him." We disagree, because, as stated above, the evidence was not cumulative and Sears's knowledge of what defendant had done to her husband was directly probative of the genuineness and reasonableness of her fear. (See, e.g., People v. Solis (1985) 172 Cal. App.3d 877, 886 [rape victim's knowledge that Solis had killed his own brother admissible to show victim's fear of Solis, overcoming her will to resist rape]; Garrett, supra, 30 Cal. App.4th at p. 967 (Garrett) [fact victim knew Garrett had killed someone admissible to show victim was in sustained fear and that fear was reasonable]; accord People v. Gaut (2002) 95 Cal.App.4th 1425, 1430-1432 [sufficiency of the evidence challenge; Gaut made threats from prison, fact victim knew of his prior acts of violence used to show reasonableness of victim's fear of threats].)

Finally, defendant argues the evidence was more prejudicial than probative. In making this argument he largely reweighs the factors and views them in favor of his contention. However, "[t]he trial court is vested with wide discretion in determining the

11

admissibility of evidence.  Its exercise of discretion under
Evidence Code section 352 will not be disturbed on appeal absent a
clear abuse, i.e., unless the prejudicial effect of the evidence clearly
outweighs its probative value." People v. Karis (1988) 46 Cal.3d
612, 637 (Karis).)

Evidence Code section 352 provides: "The court in its discretion
may exclude evidence if its probative value is substantially
outweighed by the probability that its admission will (a) necessitate
undue consumption of time or (b) create substantial danger of
undue prejudice, of confusing the issues, or of misleading the
jury."  "The prejudice which exclusion of evidence under Evidence
Code section 352 is designed to avoid is not the prejudice or
damage to a defense that naturally flows from relevant, highly
probative evidence.  '[A]ll evidence which tends to prove guilt is
prejudicial or damaging to the defendant's case.  The stronger the
evidence, the more it is "prejudicial."  The "prejudice" referred to
in Evidence Code section 352 applies to evidence which uniquely
tends to evoke an emotional bias against the defendant as an
individual and which has very little effect on the issues.  In
applying section 352, "prejudicial" is not synonymous with
"damaging."'"  (Karis, supra, 46 Cal.3d at p. 638.)

In the specific context of uncharged act evidence, "The probative
value of the uncharged offense evidence must be substantial and
must not be largely outweighed by the probability that its
admission would create a serious danger of undue prejudice, of
confusing the issues, or of misleading the jury."  (People v. Kipp
(1998) 18 Cal.4th 349, 371.)  In this case, the value of the
uncharged act evidence was substantial, as we have explained
above, and it was not "largely outweighed" by "a serious danger of
undue prejudice, of confusing the issues, or of misleading the
jury."  (Ibid.)

The evidence of defendant's assault on Miller was not remote,
time-consuming, or misleading.  Miller testified about the 2006
attack and showed the jury his scar, an officer described Miller's
injuries, and the jury learned of defendant's punishment.  The
testimony was not replete with "gory details" as defendant asserts.
The fact the jury saw scars and heard testimony that defendant
slashed Miller was not particularly inflammatory.  The evidence
was not of the kind that "uniquely tends to evoke an emotional bias
against the defendant as an individual and which has very little
effect on the issues."  (Karis, supra, 46 Cal.3d at p. 638.)

Further, the jury learned that defendant had already been punished
for that offense, therefore it is unlikely the jury would feel the need
to punish defendant in this case because of his conduct in the prior
case.  (People v. Ortiz (2003) 109 Cal. App.4th 104, 118
["defendant had been punished – via convictions – for the prior bad
acts introduced before the jury, a circumstance courts have

1     acknowledged lessens its prejudicial impact"]; cf. Ewoldt, supra, 7
2     Cal.4th at p. 405 [fact Ewoldt had not been punished increased
      possible prejudice].)

3     Defendant contends the fact the jury asked for a readback of
      Sears's testimony and acquitted defendant on some counts shows
4     "this case was quite close."  We draw a different inference from
      those circumstances: The fact the jury wanted to review Sears's
5     testimony, and ultimately acquitted defendant of the robbery and
      aggravated assault charges shows that the jury was not inflamed
6     against defendant, but took its job seriously and properly gave the
      defendant the benefit of doubts it had about what he did.
7
      We conclude the trial court properly admitted the evidence of
8     defendant's prior assault on Miller

9     (Opinion at 4-13.)

10          As explained above, a federal writ of habeas corpus is not available for alleged

11    error in the interpretation or application of state law.  Wilson, 131 S. Ct. at 16.  Absent some

12    federal constitutional violation, a violation of state law does not provide a basis for habeas relief.

13    Id.  A petitioner may not "transform a state-law issue into a federal one" merely by asserting a

14    violation of the federal constitution.  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997).

15    Rather, petitioner must show that the decision of the California Court of Appeals "violated the

16    Constitution, laws, or treaties of the United States."  Little v. Crawford, 449 F.3d 1075, 1083 (9th

17    Cir. 2006) (quoting Estelle, 502 U.S. at 68).  Accordingly, to the extent petitioner's due process

18    claims are based on alleged violations of state law governing the admissibility of evidence, they

19    should be rejected.

20          A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

21    relief only if it renders the state proceedings so fundamentally unfair as to violate due process.

22    Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); Jammal v. Van de Kamp, 926 F.2d

23    918, 919 (9th Cir. 1991).  Even so, as the Ninth Circuit has observed:

24          The Supreme Court has made very few rulings regarding the
            admission of evidence as a violation of due process.  Although the
25          Court has been clear that a writ should be issued when
            constitutional errors have rendered the trial fundamentally unfair
26          (citation omitted), it has not yet made a clear ruling that admission

1
> of irrelevant or overtly prejudicial evidence constitutes a due
> process violation sufficient to warrant issuance of the writ.

2

3  Holley, 568 F.3d at 1101.  Therefore, "under AEDPA, even clearly erroneous admissions of

4  evidence that render a trial fundamentally unfair may not permit the grant of federal habeas

5  corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme

6  Court."  Id.  On the basis of these authorities, the state court's rejection of petitioner's due

7  process claim here does not support federal habeas relief under AEDPA because the admission of

8  evidence at trial regarding petitioner's prior assault on Miller did not violate any clearly

9  established federal law.  Id.

10          Similarly, the United States Supreme Court "has never expressly held that it

11 violates due process to admit other crimes evidence for the purpose of showing conduct in

12 conformity therewith, or that it violates due process to admit other crimes evidence for other

13 purposes without an instruction limiting the jury's consideration of the evidence to such

14 purposes."  Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds

15 by Woodford v. Garceau, 538 U.S. 202 (2003).  See also Alberni v. McDaniel, 458 F.3d 860, 863

16 (9th Cir. 2006).  In fact, the Supreme Court has expressly left open this question.  See Estelle v.

17 Mcguire, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on

18 whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes'

19 evidence to show propensity to commit a charged crime").  See also Mejia v. Garcia, 534 F.3d

20 1036, 1046 (9th Cir. 2008) (holding that state court had not acted objectively unreasonably in

21 determining that the propensity evidence introduced against the defendant did not violate his

22 right to due process); Alberni, 458 F.3d at 863-67 (denying the petitioner's claim that the

23 introduction of propensity evidence violated his due process rights under the Fourteenth

24 Amendment because "the right [petitioner] asserts has not been clearly established by the

25 Supreme Court, as required by AEDPA"); United States v. LeMay, 260 F.3d 1018 (9th Cir.

26 2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child

1   molestation cases, under which the test for balancing probative value and prejudicial effect

2   remains applicable, does not violate the due process clause).  In short, because the state court's

3   rejection of petitioner's due process claim is not contrary to any United States Supreme Court

4   precedent, petitioner is not entitled to federal habeas relief with respect to this claim.

5              Petitioner's claims would also fail under controlling Ninth Circuit precedent.

6   That court has held that the admission of "other acts" evidence violates due process only if there

7   were no permissible inferences the factfinder could have drawn from the evidence.  See

8   McKinney v. Rees, 993 F.2d 1378, 1381 (9th Cir. 1993) (question is "whether any inferences

9   relevant to a fact of consequence may be drawn from each piece of the evidence, or whether they

10  lead only to impermissible inferences about the defendant's character"); Jammal, 926 F.2d at 920

11  ("[e]vidence introduced by the prosecution will often raise more than one inference, some

12  permissible, some not; we must rely on the jury to sort them out in light of the court's

13  instructions").  See also LeMay, 260 F.3d at 1027 (evidence of prior similar crimes "will only

14  sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential

15  for prejudice far outweighs what little relevance it might have").

16             Here, as explained by the state appellate court, the challenged evidence was

17  probative to show petitioner's intent and motive, and Sears's fear at the time of the incident in

18  question.  These were permissible inferences the jury could draw from evidence of petitioner's

19  prior assault on Miller that did not involve petitioner's propensity to commit the charged crimes.

20  Under these circumstances, any error in admitting evidence of petitioner's prior assault on Miller

21  did not result in a due process violation.  Nor did it have "a substantial and injurious effect or

22  influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

23  See also Penry v. Johnson, 532 U.S. 782, 793-96 (2001).

24             For all of the reasons set forth above, petitioner has failed to demonstrate that the

25  state court's decision rejecting his due process claim was contrary to or an unreasonable

26  application of federal law, or based on an unreasonable determination of the facts of this case.

1   Accordingly, petitioner is not entitled to habeas corpus relief.  28 U.S.C. § 2254(d).

2                                          CONCLUSION

3          Therefore, IT IS HEREBY RECOMMENDED that petitioner's application for a

4 writ of habeas corpus be denied.

5          These findings and recommendations are submitted to the United States District

6 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

7 one days after being served with these findings and recommendations, any party may file written

8 objections with the court and serve a copy on all parties.  Such a document should be captioned

9 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10 shall be served and filed within fourteen days after service of the objections.  Failure to file

11 objections within the specified time may waive the right to appeal the District Court's order.

12 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

13 1991).  In his objections petitioner may address whether a certificate of appealability should issue

14 in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules

15 Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

16 when it enters a final order adverse to the applicant).

17 DATED: April 27, 2012.

18

19                                         _____

20                                    DALE A. DROZD
                                   UNITED STATES MAGISTRATE JUDGE

21 DAD:8
cummings2657.hc

22

23

24

25

26

16